# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT CHEATHAM, # 11425** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-7607** |
| **WARDEN** | **SECTION "S" (6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. For the reasons set forth below, it is recommended that the instant petition be **DENIED WITH PREJUDICE.**[1]

---

[1] The court wishes to acknowledge the assistance of C. Hagerty, a third-year law student at Tulane Law School, who assisted in the research and preparation of this decision.

## <u>PROCEDURAL HISTORY</u>

Petitioner, Robert Cheatham, is a state prisoner incarcerated in the Jackson Parish Correctional Center in Jonesboro, Louisiana.[2]  Cheatham was found guilty by a jury of attempted armed robbery on October 22, 2002 in Terrebonne Parish District Court, Case # 401875 "D".  On November 15, 2002, Cheatham was sentenced to serve twenty years imprisonment at hard labor with credit for time served without benefit of probation, parole or suspension of sentence. Cheatham's conviction was affirmed by the Louisiana First Circuit Court of Appeal on June 25, 2004.[3] Petitioner's application requesting review of the First Circuit's decision was denied by the Louisiana Supreme Court on November 24, 2004.[4]  Cheatham did not seek review with the United States Supreme Court.

Cheatham next filed a state post-conviction application with the trial court on November 22, 2005.[5]  The trial court denied relief on the merits on June 23,

---

[2]At the time this petition was filed, Cheatham was housed in the Claiborne Parish Detention Center.  He subsequently notified the court that he had been relocated to the Jackson Parish Correctional Center.

[3]*State v. Cheatham*, 876 So.2d 970 (La. App. 1 Cir. 6/25/04)(Table, No. 2003-KA-2495), a copy of which can be found in State Rec. vol. 1.

[4]*State v. Cheatham,* 888 So.2d 227 (La. 11/24/04)(No. 2004-K-1794), a copy of which can be found in State Rec. vol. 1.

[5]See State Court Rec. vol. Supp. 3 for a copy of the application filed.

2006.[6]  Cheatham then filed for writ of review with the appellate court on September

8, 2006.[7]  The First Circuit, finding no error in the trial court's judgment, denied relief

on October 30, 2006.[8]  A subsequent writ to the Louisiana Supreme Court seeking

review was signed by Cheatham on November 27, 2006, and stamped as filed on

December 18, 2006.[9]  The Louisiana Supreme Court denied relief on September 28,

2007.[10]

　　　　　The instant petition for writ of habeas corpus was signed by Cheatham

on October 22, 2007 and stamped as filed on October 26, 2007.  Therein, petitioner

argues: 1) that defense counsel was ineffective; 2) that the State presented insufficient

evidence to convict; 3) that there was a incompetent witnesses presented 4) by a

vindictive prosecutor; and, 5) both an illegal, 6) and excessive, sentence was given.[11]

The State's response, filed on January 29, 2008, asserts that petitioner's application

is not subject to federal review as the federal petition is time-barred.  The response did

---

[6]See State Court Rec. vol. Supp. 3 for a copy of the decision.

[7]See State Court Rec. vol. Supp.1 for a copy of the application, Writ No. 2006-KW-1788.

[8]See State Court Rec. vol. 1 for a copy of the decision.

[9]See State Court Rec. vol. 1 for a copy of petitioner's writ application, Writ No. 2006-KH-2962.  See also State Court Rec. vol. 1 for a copy of a letter from the Clerk, Louisiana Supreme Court, confirming the filing date for petitioner's writ application.

[10]See State Court Rec. vol. Supp. 1 for a copy of the Louisiana Supreme Court's denial in *State ex rel. Cheatham v. State*, 964 So.2d 354 (La. 9/28/07)(No. 2006-KH-2962).

[11]See Federal Rec. Doc. 1-1.

not address the merits of the claims raised.[12]

On September 23, 2009, the Magistrate Judge issued a Report and Recommendation rejecting the State's asserted defense, as the October 22, 2007 petition for writ of habeas corpus was timely filed.[13]  The Magistrate Judge further ordered the State to respond to the merit's of petitioner's application for federal habeas relief.[14]  On December 3, 2009, the District Court adopted the Report and Recommendation issued by the Magistrate Judge on September 23, 2009, rejecting the State's time-bar defense and ordering the State to file a response on the merits.[15]

The State filed its response to the Report and Recommendation and subsequent Order on October 21, 2009.[16]  The Court, therefore, shall proceed to address the merits of petitioner's claims after reviewing the applicable facts and standard of review.

---

[12]See Federal Rec. Doc. 9 at pp. 1-6.

[13]See Federal Rec. Doc. 12 at p. 9.

[14]See Federal Rec. Doc. 12 at p. 9.

[15]See Federal Rec. Doc. 15.

[16]See Federal Rec. Doc. 14.

# FACTS[17]

On June 22, 2000, Michael Johnson was at his home in Gibson, Louisiana, when two men, later identified as Frederick Oatis and Jeremy Herron, kicked in his front door.  Both men, armed with handguns, entered Johnson's residence and attempted to rob him.  During a struggle between Oatis and Johnson, a gunshot was fired.  Johnson was struck in the chest, but survived the shooting.  Oatis and Herron immediately ran from the residence.

Shortly thereafter, Oatis and Herron were developed as suspects in the attempted armed robbery.  During police questioning, both men confessed to committing the offense, but indicated they did so at the instigation of the defendant, Robert Lee Cheatham.  The defendant was subsequently arrested and charged as a principal to attempted armed robbery.

In the instant case, the defendant's conviction was based primarily on Herron's trial testimony regarding the details of the robbery attempt.  Herron testified that the defendant planned the robbery and recruited him and Oatis to assist in carrying it out.  Herron testified he and Oatis were in Thiboadaux, Louisiana, when the defendant approached them and indicated that he had 'a lick' set up for them.

---

[17]These facts are adopted from the Louisiana Court of Appeal, First Circuit's opinion, *State v. Cheatham*, 876 So.2d 970 (La. App. 1 Cir. 6/25/04)(No. 2003-KA-2495) (unpublished). A copy of the decision is contained in State Rec. vol. 1.

Herron testified that a 'lick' was street terminology for a robbery. When Oatis and Herron agreed to participate in the robbery, the defendant gave Oatis a handgun, transported the men to Gibson, and showed them where the victim lived.

According to Herron, he and Oatis approached the victim at his residence and asked to purchase marijuana. The defendant did not accompany Herron and Oatis onto the victim's property because he knew the victim, his cousin, would easily identify him. Instead, the defendant stayed behind at a trailer near the victim's residence. At the residence, the suspicious victim refused to sell marijuana to Oatis and Herron. Thus, the men were unable to confirm whether the victim actually possessed any marijuana-the subject of the planned robbery. Herron and Oatis returned to the defendant's vehicle. Thereafter, in an apparent attempt to confirm that the victim possessed the marijuana, the defendant went to the residence and successfully purchased some marijuana from the victim. The defendant then returned to his vehicle and informed Oatis and Herron that there was indeed marijuana at the residence. Oatis and Herron proceeded to the residence, kicked in the door, and attempted to rob the victim. The robbery attempt was unsuccessful, and both men fled the residence after a shot was fired striking the victim in the chest. Oatis and Herron immediately returned to the vehicle, and the defendant transported them back to Thibodaux.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C.§ 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set fourth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's

> application of clearly established federal law is objectively
> unreasonable, and we stressed in *Williams [v. Taylor*, 529 U.S.
> 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000)] that an
> unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002)

(citations omitted).

As to questions of fact, factual findings are presumed to be correct and

a federal court will give deference to the state court's decision unless it "was based

on an unreasonable determination of the facts in light of the evidence presented in the

State Court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill,* 210 F.3d at 485; 28

U.S.C. § 2254(e)(1).

## ANALYSIS

### A. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is a mixed question of law

and fact. *Boyle v. Johnson*, 93 F.3d 180, 187 (5th Cir. 1996). As such, under the

AEDPA, this Court may grant habeas relief only upon a determination that the state

court decision rested upon an unreasonable application of clearly established Supreme

Court law to the facts of the case. *See* 28 U.S.C. § 2254 (d)(1).

The applicable law was enunciated by the Supreme Court in *Strickland*

*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under

*Strickland*, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), citing *Strickland*, 466 U.S. at 690. "An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." *U.S. v Walker*, 68 F.3d 931, 934 (5thCir. 1995), quoting *U.S. v Acklen*, 47 F.3d 739, 742 (5thCir. 1995). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *Strickland*, 466 U.S. at 688-89. Petitioner "carries the burden of proof...and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of professional assistance." *Crockett v. McCotter*, 796 F.2d 787, 791 (5thCir. 1986).

To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* court defined a reasonable probability as a "probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, the court must review the record to determine the "relative role that the alleged trial errors played in the total context of the trial." *Crockett*, F.2d at 793.

Petitioner argues that he received ineffective assistance of counsel from his retained counsel, Mr. James Alcock. He alleges that Mr. Alcock was non-responsive, did not adequately prepare for trial, and allowed an all white jury to be selected.[18] Petitioner further argues that he received ineffective assistance of counsel because his attorney withdrew as the attorney of record temporarily.[19]

Petitioner raised his ineffective assistance of counsel claim in his state post-conviction proceedings. In addressing petitioner's claim, the State District Court reviewed petitioner's burden of proving, under *Strickland, supra,* that counsel's performance was deficient and that he was prejudiced by this deficient performance. The court also observed, in relation to petitioner's complaints that Mr. Alcock temporarily withdrew as the attorney of record, that:

---

[18]See Federal Rec. Doc. 1-1, p. 3.

[19]See State Court Rec. Vol. 1.

> "the fact that an attorney withdraws from representation and later enrolls as counsel by appearing in court and filing pleadings on his client's behalf, does not, ipso facto, mean that future services by the attorney on behalf of his client fell below an objective standard of reasonableness. To support any claim of ineffectiveness of counsel, Mr. Cheatham must point out the specific actions or inactions of his attorney that caused the attorney's representation to be less than reasonable."[20]

The State District Court further stated, in relation to petitioner's ineffective assistance of counsel claims, that:

> "The only specific allegations by Mr. Cheatham alleging deficient performance on Mr. Alcock's part are that he failed to properly investigate the facts of the case and that he 'allowed' Mr. Cheatham to be tried by an all white jury. Mr. Cheatham, in his thirty-seven page post conviction relief application does not state a single fact that Mr. Alcock should have presented to the jury that was not presented. His application consists of broad, general assertions without the statement of any specific facts that might support a claim of ineffective assistance of counsel. Likewise, he does not point to any specific action or inaction on Mr. Alcock's part that led to the impanelment of the allegedly all white jury. A defendant does not have a constitutional right to be tried by a jury composed, in whole or in part, of members of any particular racial group. He has a right to be tried by fair and impartial jurors selected in accordance with constitutional standards. Mr. Cheatham has not pointed out to this court how the selection of his jury in this case in any way violated those constitutional standards. After a review of the jury selection process in this case, this court is convinced that no such violation occurred."[21]

Petitioner was not prejudiced by counsel's jury selection tactics and the

---

[20]See State Court Rec. Vol. 1.

[21]See State Rec. Vol. 1.

resulting racial makeup of the jury. In *Moore v Butler*, 819 F.2d 517, 520 (5thCir. 1987) the United States Court of Appeals for the Fifth Circuit held that a 'color-blind' approach to jury voir dire was not proof of a prejudiced case, without more, even if it resulted in an African-American defendant being tried by an all-white jury. Thus, petitioner's claim that his counsel was ineffective because counsel allowed an all-white jury to be seated is unfounded, as he points to no constitutional violation that occurred during voir dire. Moreover, even assuming *arguendo,* that counsel's voir dire performance was deficient, petitioner has not come close to showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. 688, 694 (1984)).

Petitioner's claim that he received ineffective assistance of counsel because his counsel withdrew from his case temporarily before later returning to the case is also unfounded. This claim was raised in his state habeas application, and denied. He has not presented this Court with any proof that he was prejudiced by counsel's withdrawal and subsequent return. Thus, petitioner's claim that he received ineffective assistance of counsel because his attorney temporarily withdrew from the case is without merit as it points to no specific actions or inactions by the attorney that caused his representation to be less than constitutionally sufficient.

Finally, petitioner's claim that he received ineffective assistance of counsel because his attorney of record, Mr. Alcock, was non-responsive and did not adequately prepare for trial are also unfounded. The factual findings of a state court are presumed to be correct and this Court must give deference to the state court's findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[22] The trial court's determination that Mr. Cheatham had failed to assert or prove any claims of ineffective assistance of counsel is not an unreasonable application of federal law or an unreasonable determination of the facts. Mr. Cheatham presents no new arguments in this federal habeas corpus petition nor does he allege any additional facts which would support his claim. Specifically, Mr. Cheatham fails to show how any specific action or inaction by his attorney, Mr. Alcock, damaged his case. Accordingly, petitioner was not prejudiced by counsel's alleged deficiency and, as such, counsel was not unconstitutionally ineffective.

## B. Insufficiency of Evidence to Convict

Cheatham complains that the evidence presented at trial was insufficient to support the jury's verdict. Specifically, he asserts that the State failed to prove he

---

[22]28 U.S.C. 2254(d)(2); see *Hill v Johnson,* 210 F.3d 481, 485 (5th Cir. 2000).

participated in the armed robbery or that the intent of the robbery was to steal drugs.

When conducting a post-AEDPA sufficiency of the evidence review, a federal court may grant relief only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case. *See* 28 U.S.C. § 2254(d)(1).

In its analysis of Cheatham's insufficiency of evidence claim, the Louisiana First Circuit Court of Appeal first set forth the applicable Supreme Court law, along with corresponding state law, providing:

> The standard of review for the sufficiency of the evidence to uphold a conviction is whether, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. *See* La. Code Crim. P. art. 821; *State v. Johnson*, 461 So.2d 673, 674 (La. App. 1 Cir. 1984).
>
> The *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard of review incorporated in La. Code of Crim. P. art. 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. *State v. Nevers*, 621 So.2d 1108, 1116 (La. App. 1 Cir.). *writ denied*, 617 So.2d 906 (La. 1993); *State v McLean*, 525 So.2d 1251, 1255 (La. App. 1 Cir.). *writ denied*, 532 So.2d 130 (La. 1988).

The state appellate court then reviewed Cheatham's arguments, the same arguments set forth in the instant habeas petition, offered to support his claim that the

testimony of a co-defendant was insufficient to sustain his conviction. First, Cheatham

argues that the evidence, as given, was insufficient to support a finding that he had the

required criminal intent to commit armed robbery. The First Circuit, however,

countered that petitioner did, in fact, have the requisite intent to commit armed

robbery, as proven by the testimony of Herron, the co-defendant:

> Specific criminal intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R. S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as defendant's actions or facts depicting the circumstances. *State v Cummings*, 99-3000, p. 3 (La. App. 1 Cir. 11/3/00), 771 So.2d 874, 876.
>
> In the instant case, the defendant's conviction was based primarily on Herron's trial testimony regarding the details of the robbery attempt. Herron testified that the defendant planned the robbery and recruited him and Oatis to assist in carrying it out. Herron testified he and Oatis were in Thibodaux, Louisiana, when the defendant approached and indicated he had a "lick" set up for them. Herron testified that a 'lick' was street terminology for robbery. When Oatis and Herron agreed to participate in the robbery, the defendant gave Oatis a handgun, transported the men to Gibson, and showed them where the victim lived.
>
> Herron's testimony established that the defendant orchestrated the plan to rob the victim and actively assisted in executing it.

This court's independent review of the trial transcripts shows that Cheatham

was identified as the individual who "set up" the crime, he provided the transportation

to the crime scene, he provided the gun which was used in the robbery attempt, he

identified the victim to the other perpetrators as someone who possessed marijuana which could be stolen, he was the person who initially went to the victim's house to ascertain that marijuana was actually present there prior to the attempted robbery, and, he provided the transportation "get away car" for the perpetrators to leave the scene of the crime.[23] Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that petitioner possessed the requisite intent to commit armed robbery.

Second, Cheatham argues that, using the evidence presented, the State did not prove that he actually participated in or attempted to rob the victim at gunpoint. The First Circuit, however, countered that the petitioner actively participated in the robbery because he orchestrated it:

> From the evidence presented, it is clear the State did not prove that the defendant actually attempted to rob the victim at gunpoint. Herron clearly testified that only he and Oatis entered the victim's residence armed with weapons. However, La. R.S. 14:24 provides that a defendant may also be guilty of a crime under the law of principles as follows: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel procure another to commit the crime, are principles."
> Under the law of principles, a defendant can be found guilty of armed robbery if he aids and abets, or directly or indirectly

[23]See State Rec. supplemental vol. 2, Trial Transcript at pp. 258, 261-263, 265-268, 270 and 272 (testimony of Jeremy Herron).

16

counsels or produces another to commit a crime. Under this theory, the defendant need not actually take anything or even hold a weapon to be guilty as a principal of armed robbery. *State v. Dominick*, 354 So.2d 1316,1320 (La. 1978). All persons involved in the commission of a crime, whether present or absent, are equally culpable. *State v Hampton*, 98-0331, p.13 (La. 4/23/99), 750 So.2d 867, 880, *cert denied*, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); *State v Jones*, 2000-2009 p.7 (La. App. 1 Cir. 5/11/01), 808 So.2d 609. 614. *Writ denied*, 2001-1698 (La. 5/3/02) 815 So.2d 93.

Upon reviewing the evidence in the light most favorable to the State, we are convinced that the evidence presented was sufficient to support the defendant's conviction as a principal to the attempted armed robbery committed by Oatis and Herron. Herron's trial testimony provides sufficient direct evidence from which a reasonable fact finder could have concluded beyond a reasonable doubt, and to the exclusion of any reasonable hypothesis of innocence, that the defendant was involved in the commission of the instant offense.

For the aforementioned reasons, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of armed robbery present beyond a reasonable doubt, even if they did come primarily from the testimony of a co-defendant. Accordingly, Cheatham's insufficiency of evidence claim does not warrant federal habeas corpus relief.

### C. Vindictive Prosecution

Petitioner claims that the prosecutor's use of "the charging process" amounts to vindictiveness. Specifically, petitioner argues that amendments made to the original bill of information amounted to vindictiveness by the prosecution.

Petitioner's claim for vindictive prosecution is viewed under the standard that "a prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *United States v Goodwin*, 457 U.S. 368, 379-82, 102 S.Ct. 2485, 2492-93, 73 L.Ed. 2d 74 (1982). "An initial decision should not freeze future conduct...(as) the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Id.* A mere opportunity for vindictiveness is insufficient to justify a presumption of vindictiveness. *Id.* at 384. Because petitioner was indicted on a single count of attempted armed robbery after an initial indictment on the charges of attempted second degree murder and aggravated burglary, his sentencing exposure decreased and petitioner was actually better off as a result of the charge amendment. Such actions of a prosecutor cannot be characterized as vindictive, and no presumption of prosecutorial vindictiveness is attached. Absent a presumption of vindictiveness in this context, the defendant must prove that the prosecutors' conduct was actually vindictive. *See United States v. Molina-Iguado*, 894 F.2d 1452, 1455 (5th Cir. 1990), *cert. denied*, 498 U.S. 831, 111 S. Ct. 95, 112 L.Ed.2d 66 (1990).

Petitioner has not presented nor does the record support any reasonable ground to believe that the series of amendments to the original bill of information was

motivated by a desire to punish the petitioner or his legal rights. Accordingly, petitioner's claim of vindictive prosecution is denied.

### D. Incompetent Witness

Petitioner also claims that the state used an "incompetent witness" at trial, presenting "muddled" evidence into the record. He also appears to argue that the State used "immunized testimony" against him. However, petitioner does not specify what particular testimony he is challenging, exactly who made the challenged statements, nor does he explain how that evidence prejudiced him at trial.[24]

Review of the trial transcript, specifically of the testimony of the State's key witness, Jeremy Herron, a co-perpetrator of the subject crime who testified against Cheatham, shows that Mr. Herron was given certain reassurances by the State prior to rendering his testimony. Specifically, Herron was told that the State would not oppose his motion to reduce his 25 year sentence ( a sentence which was imposed upon him due to his conviction for the subject crime)[25] and the State did not intend to double-bill him as a second offender if he testified truthfully and consistently at

---

[24]Petitioner states that the victim stated that he was "sleeping" at the time of the crime yet other testimony indicated the victim had just been with the defendant prior to the crime. The victim was deceased at the time of Cheatham's trial and did not testify. Additionally, the jury heard that approximately 15 minutes lapsed between the time Cheatham allegedly visited the victim to purchase marijuana and the time when Oatis and Herron knocked down the victim's door and attempted to rob him. See T.T. at p.290. Considering the lapse of time between the two events, the jury apparently found no discrepancy in the challenged testimony.

[25]See T.T. at p.272.

Cheatham's trial. Herron was also reassured that anything he stated under oath at Cheatham's trial would not be used against him in a future proceeding.[26] The deal offered to Herron by the State, however, was revealed to the jury during the course of Herron's testimony, thus allowing the jury to assess the weight and credibility to be given to Herron's testimony. Since the jury heard the deal reached between the State and Herron, petitioner cannot show any prejudice as a result of the testimony being admitted.

Federal habeas courts do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding. "Thus the erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant" role in the jury's determination". *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999), *cert. denied*, 529 U.S. 1027, 120 S.Ct. 1437, 146 L.Ed.2d 326 (2000) (quoting *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118, 119 S.Ct. 1768, 143 L.Ed.2d 798 (1999)). Petitioner herein fails to make such a showing thus the claim fails to justify habeas relief.

### E. Excessive Sentence

---

[26]See T.T. at pp.274-276.

Petitioner claims that the trial court erred in imposing an unconstitutionally excessive sentence. Specifically, petitioner argues that his sentence is grossly disproportionate because the crime and punishment are uneven and shock the sense of justice. The crime of attempted armed robbery, La. R.S. 14:27 and 14:64, carries a sentence of imprisonment at hard labor not less than ten years and not more than 49 ½ years without the benefit of parole, probation, or suspension of sentence. The trial court sentenced petitioner to serve twenty years at hard labor, without the benefit of probation, parole, or suspension of sentence.

The state district court denied petitioner's excessive sentence claim, and this denial was upheld by the Louisiana First Circuit Court of Appeal,[27] which stated:

> The court proceeded to consider the criteria of Article 894.1. In mitigation, the court noted that the defendant was a relatively young man and that the instant offense was his first felony conviction. As aggravating circumstances, the court noted that the defendant was responsible for the organization of the offense and added, "In effect, he was the brains behind the activity." The court further noted that the offense resulted in violence. The court concluded that a sentence of imprisonment was warranted and that any lesser sentence would deprecate the seriousness of this very serious offense. Although the trial court may not have articulated every aggravating and mitigating factor, a review of the record indicates that the trial court's reasons for sentence more then adequately demonstrate compliance with Article 894.1.

---

[27]See State Rec. vol. 1, *State v. Cheatham*, No. 2003-KA-2495 (La. Ct. App. 1ˢᵗ Cir, June 25, 2004) at p. 8.

The offense of attempted armed robbery is punishable by imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence, for not more than forty-nine and one-half years. La. R.S. 14:27(D)(3) and 14:64(B). For the instant offense, the defendant was sentenced to imprisonment at hard labor for twenty years.

Considering the nature of the instant offense and the trial court's reasons for sentence, we find no manifest abuse of sentencing discretion in the sentence imposed. In light of the harm to society and to the victim, the sentence imposed was neither grossly disproportionate to the severity of the crime, nor so disproportionate as to shock our sense of justice. Thus, contrary to the defendant's claim, the sentence is not constitutionally excessive.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler,* 825 F.2d 921, 923-24 (5th Cir. 1987); and, *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable *habeas* claim for excessive sentence). If a sentence is within the statutory limits, a federal *habeas* court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense. *Harmelin v. Michigan,* 501U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). See also, *Jones v. Cain,* 2009 WL 928 477 (E.D.La., April 3, 2009 (Lemmon, J.); *Lott v. Miller,* 2008 WL 4889650 (E.D.LA., Nov. 3, 2008) (Africk, J.); and, *Williams v. Cain,* 2008 WL 3363562 (E.D. La., Aug 8, 2008) (Barbier, J.).

Here, Cheatham's sentence of twenty years without benefit of parole, probation or suspension of sentence is less than half of the maximum sentence which could have been imposed upon for his crime; and thus is well within the statutory range. The state sentencing court considered both aggravating and mitigating circumstances but decided that any lesser sentence would undermine the seriousness of the crime. A sentence of twenty years was determined appropriate because Cheatham was considered the mastermind behind a crime which resulted in the victim being shot.

The United States Supreme Court has stated that " '[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate" to the crime.'" *Ewing v. California,* 538 U.S. 11, 21, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (*quoting Harmelin,* 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. *Id.*, 538 U.S. at 30 (*quoting Harmelin,* 501 U.S. at 1005). As noted above, that disporportionality is judged by whether similar sentences have been imposed for the same offense. *Smallwood,* 73 F.3d at 1346-47.

In the similar Louisiana case of *State v. Black*, 12 So.3d 1014 (La. App.2nd Cir. 2009), the defendant was given a sentence of 23 years for the crime of

attempted armed robbery although the defendant was young, lacked a criminal history and was found to be only a principal to the crime rather than one who was actually present when the crime was committed. The court found, however, that the defendant was the leader of the group planning the robbery and that the crime was committed with a dangerous weapon.[28] The court rejected an excessive claim, finding the "midrange sentence (did not) shock the sense of justice." *Id* at 1021. Considering *Black* and other Louisiana cases where defendant's were sentenced for attempted armed robbery, Cheatham's sentence does not appear to be disproportionate to his crime. Nor does Cheatham provide the court with any authority to show that his sentence was grossly disproportionate to sentences received for similar crimes in Louisiana.

Cheatham fails to show that his sentence is excessive for the crime for which he was charged. This claim is without merit.

**F. Illegal Sentence**

Petitioner contends that the trial court erred in imposing an unconstitutional and therefore illegal sentence. Specifically, petitioner contends that the sentence imposed upon him was based on false and unreliable information.

---

[28]Defendant had been arrested for several other robberies or attempted robberies but had never been convicted of a crime prior to the subject crime.

Therefore, petitioner contends, any sentence imposed because of fraudulent information is a due process violation.

Petitioner's conviction, as explained in section B of this Report and Recommendation, was not based on false or unreliable information.  It is clear from the trial court record that the decision of the state court to convict petitioner of the attempted armed robbery charge did not rest on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case.  *See* 28 U.S.C. § 2254(d)(1).  Because the original conviction was not based on false information, it can only be illegal if it does not fall within the sentencing guidelines as defined by the statute.

Attempted armed robbery carries a sentence of imprisonment at hard labor not less than ten years and not more than forty nine and one half years without benefit of parole, probation, or suspension of sentence.[29]  The court sentenced Mr. Cheatham to serve twenty years at hard labor, without the benefit of probation, parole, or suspension of sentence.  On appeal, the Louisiana First Circuit Court of Appeal found that the sentence imposed was within the legal limits and not illegal.  This finding has not been shown to be contrary to clearly established federal law as determined by the Supreme Court. 28 U.S.C. §2254(d)(1).

---

[29]La. R.S. 14:27 and 14:64.

# RECOMMENDATION

Accordingly, for the aforementioned reasons, IT IS HEREBY RECOMMENDED that petitioner's application for habeas corpus relief be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglas v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[30]

New Orleans, Louisiana, this 19th day of February, 2010.

LOUIS MOORE, JR.
UNITED STATES MAGISTRATE JUDGE

---

[30]*Douglas* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.